United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AMERICAN SEMICONDUCTOR, INC., an Idaho corporation,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>CALIFORNIA ASSIGNMENTS LLC, a California limited liability company; DEVELOPMENT SPECIALISTS, INC., an Illinois corporation; and DOES 1 through 10, inclusive,<br><br>　　　　　　　Defendants. | Case No.: 12-CV-06138-LHK<br><br>ORDER DENYING PLAINTIFF'S REQUEST FOR NONPARTIES TSI SEMICONDUCTORS AND NORTHALL GROUP HOLDINGS TO SHOW CAUSE |

Plaintiff American Semiconductor Inc. ("ASI") requests that this Court order non-parties TSI Semiconductors ("TSI") and Northall Group Holdings LLC ("Northall") (collectively, "TSI/Northall") to show cause why they should not be sanctioned for contempt of this Court's April 2, 2013 preliminary injunction order. ECF No. 79 ("Mot."). TSI/Northall filed its opposition to this request on October 10, 2013. ECF No. 89 ("Opp'n."). ASI filed its reply on October 17, 2013. ECF No. 91 ("Reply"). Having considered the submissions of the parties, the relevant law, and the record in this case, the Court hereby DENIES ASI's request.

**I.    BACKGROUND**

ASI's request for an order to show cause arises in the context of an action in which ASI sued California Assignments, LLC ("CAL") and Developments Specialists, Inc. ("DSI")

(collectively, "CAL/DSI"), alleging that they wrongfully refused to release or allow inspection of "nearly $1 million of [ASI's] tangible property, as well as [ASI's] intellectual property reflecting more than ten years of development." ECF No. 5 at 3 (ASI's preliminary injunction motion).[1] ASI sought a preliminary injunction against CAL/DSI to prevent them from "continuing to remain in the improper possession, custody or control of [ASI's] property," *id.* at 2, which this Court granted, ECF No. 45 (Order granting preliminary injunction). ASI's request for an order to show cause is based on TSI/Northall's alleged violation of this preliminary injunction order. ASI has submitted two declarations in support of its motion. ECF No. 79-9 (Declaration of John Zarian, counsel for ASI); ECF No. 79-1 (Declaration of Doug Hackler, President and CEO of ASI). In support of its opposition, TSI/Northall has submitted one declaration (Declaration of David Bridgeford, Chief Financial Officer of both TSI and Northall). ECF No. 89-1 at 1. Below, the Court sets forth the relevant facts as not disputed by the parties, unless otherwise indicated.

ASI is a semiconductor foundry, and SVTC Technologies ("SVTC") used to operate a plant located at 3901 North First Street in San Jose, California (the "San Jose Facility"). Hackler Decl. ¶¶ 3-4. For some time, SVTC acted as ASI's primary supplier of fabrication capacity, *id.*, and ASI stored some of its intellectual property on tools and equipment located at the San Jose Facility. *Id.* ¶ 6. In 2012, SVTC refused to release to ASI any of ASI's intellectual property or other property unless ASI paid a sum of money which ASI disputed that it owed. *Id.* ¶¶ 10-15.

Subsequently, the San Jose Facility was shut down, and the shut down was "coordinated by CAL/DSI as SVTC's assignee for the benefit of creditors." Mot. at 3 (citing Zarian Decl. ¶ 4). ASI tried to negotiate with CAL/DSI to retrieve its property in October 2012, but CAL/DSI refused to allow ASI to retrieve, secure, or inspect its property without attaching various conditions. Zarian Decl.¶ 4; Hackler Decl. ¶ 15. As a result, ASI filed a lawsuit against CAL/DSI in December 2012 in order to resolve the dispute. Zarian Decl.¶ 8.

According to ASI, sometime after November 1, 2012, "CAL/DSI" conducted an auction of SVTC's assets and equipment, and the successful bidder for substantially all the assets and

---

[1] ASI and CAL/DSI have since reached a settlement and plan to file a joint stipulation for dismissal of ASI's action with prejudice. ECF No. 92.

Case No.: 12-CV-06138-LHK         2
ORDER DENYING PLAINTIFF'S REQUEST FOR TSI AND NORTHALL TO SHOW CAUSE

equipment was TSI. Mot. at 3 (citing Zarian Decl. ¶¶ 5, 11, noting that a company named "Telefunken" subsequently changed its name to TSI); Zarian Decl. Exhibit G at 93 (deposition testimony of CAL/DSI's representative stating that Telefunken bought the assets that were auctioned). TSI/Northall claim that some of SVTC's assets and equipment were in fact sold at a public auction conducted by DSI in November and December 2012 in two different transactions. Opp'n at 3; Bridgeford Decl. ¶ 3. TSI/Northall, however, contend that neither TSI nor Telefunken made these purchases. Opp'n at 3, 10; Bridgeford Decl. ¶ 4 ("TSI was not the Acquiring Entity"); ¶ 7 ("Telefunken . . . [was] *not* the Acquiring Entity") (emphasis in original). Further, while ASI claims that TSI was formerly known as "Telefunken" and thus implies that the two are one and the same company, *see* Mot. at 1, 2 (claiming Telefunken is the former name of TSI); Zarian Decl. Exhibit H (Sacramento business press article noting that Telefunken changed its name to TSI), TSI/Northall assert that Telefunken is a "separate legal entity" from TSI, but do not address whether Telefunken was in fact the former name of TSI. Opp'n at 4; Bridgeford Decl. ¶ 7.

On April 2, 2013, this Court entered its preliminary injunction Order, and enjoined CAL/DSI and "their agents, servants, employees and attorneys, and all those in active concert or participation with them," from taking any one of the following actions before trial: "(1) Selling, using, moving, concealing, transferring or otherwise disposing of any ASI Inventory or any ASI Intellectual Property in their possession, custody or control; (2) Moving, transferring, disposing, concealing or otherwise disposing of any equipment or assets that contained any ASI Intellectual Property at any time; and, (3) Interfering with [ASI's] retrieval of ASI Inventory, ASI Intellectual Property and any other ASI property from the San Jose Facility at a mutually convenient time." ECF No. 45 at 2.

On April 12, 2013, after the preliminary injunction was granted, the real property and facility comprising the San Jose Facility was sold at a trustee's sale conducted at the behest of Wells Fargo Bank, who was the secured creditor of SVTC and beneficiary under the deed of trust. Hackler Decl. Exhibit C; Zarian Decl. Exh DD. According to ASI and the testimony of Geoffrey Berman, who was deposed as CAL/DSI's representative, Telefunken created Northall as a "special purpose entity" in order to buy the San Jose Facility. Mot. at 4; Zarian Decl. Exhibit G, at 93-94,

Case No.: 12-CV-06138-LHK                                             3
ORDER DENYING PLAINTIFF'S REQUEST FOR TSI AND NORTHALL TO SHOW CAUSE

96, 108 (testifying that Telefunken bought the facility which was subject to the nonjudicial foreclosure process by Wells Fargo, and shortly thereafter transferred title to the property to a special entity purpose entity it created, Northall). TSI/Northall agree that Northall acquired the facility on April 12, 2013 through a trustee's sale at the behest of Wells Fargo. Opp'n at 4; Bridgeford Decl. ¶ 9.

Before the Court now is ASI's motion for an order to show cause against TSI/Northall, claiming that TSI/Northall have not complied with the preliminary injunction by moving, transferring, or otherwise disposing of ASI's intellectual property or equipment and tools that contained or once contained ASI's intellectual property. Mot. at 1-2. ASI also claims TSI/Northall interfered with ASI's retrieval of its intellectual property from the San Jose Facility. *Id.* at 1, 13. ASI asks this Court to order TSI/Northall to show cause why they should not be sanctioned for contempt of this Court's preliminary injunction, and seeks civil contempt sanctions and an award of reasonable attorneys' fees and costs. *Id.* at 14.

## II. LEGAL STANDARD

Civil contempt "consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Reno Air Racing Ass'n., Inc. v. McCord,* 452 F.3d 1126, 1130 (9th Cir. 2006) (citing *In re Dual–Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)); *see also In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987) ("A person fails to act as ordered by the court when he fails to take all the reasonable steps within his power to insure compliance with the court's order.") (citation, quotation marks, and alterations omitted). "The contempt 'need not be willful,' and there is no good faith exception to the requirement of obedience to a court order." *In re Dual-Deck Video*, 10 F.3d at 695 (citing *In re Crystal Palace*, 817 F.2d at 1365).

"Civil contempt sanctions . . . are employed for two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992) (citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947)). "Generally, the minimum sanction necessary to obtain compliance is to be imposed." *Id.* (citations omitted). "Unlike the punitive

Case No.: 12-CV-06138-LHK  4
ORDER DENYING PLAINTIFF'S REQUEST FOR TSI AND NORTHALL TO SHOW CAUSE

nature of criminal sanctions, civil sanctions are wholly remedial." *Id.* (citation omitted). "A court has wide latitude in determining whether there has been contemptuous defiance of its order." *Gifford v. Heckler*, 741 F.2d 263, 265–66 (9th Cir. 1984) (citing *Neebars, Inc. v. Long Bar Grinding, Inc.*, 438 F.2d 47, 48 (9th Cir. 1971)). Trial courts also have power to award reasonable attorney's fees and costs against the contemnor as a sanction for disobedience of its orders. *Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985).

"The party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by 'clear and convincing evidence.'" *In re Dual–Deck Video*, 10 F.3d at 695 (citing *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982)). "The burden then shifts to the contemnors to demonstrate why they were unable to comply." *Stone v. City and County of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992) (citing *Donovan v. Mazzola,* 716 F.2d 1226, 1240 (9th Cir. 1983)). "They must show they took every reasonable step to comply." *Id.* (citation omitted).

### III.   ANALYSIS

The Court must decide whether TSI/Northall's alleged violations of the preliminary injunction can serve as an appropriate basis for an order to show cause. The Federal Rules of Civil Procedure "provide for enforcement of judgments against non-parties in limited circumstances." *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1323 (9th Cir. 1998). Pursuant to Fed. R. Civ. P. 65(d), an injunction is "binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise."[2] Fed. R. Civ. P. 65(d). The Court must thus resolve, as a threshold matter, whether its preliminary injunction order binds TSI and Northall, who were not parties to the action in which this Court's preliminary injunction was entered. TSI/Northall argue that they are not bound by the preliminary injunction, and thus cannot

---

[2] Fed. R. Civ. P. 71 provides that "when obedience to an order may be lawfully enforced against a person who is not a party, that person is liable to the same process for enforcing obedience to the order as if a party." Fed. R. Civ. P. 71. "Rule 71 was intended to assure that process be made available against persons who are properly affected by them, even if they are not parties to the action." *Westlake North Property Owners Ass'n v. Thousand Oaks*, 915 F.2d 1301, 1304 (9th Cir. 1990).

Case No.: 12-CV-06138-LHK                              5
ORDER DENYING PLAINTIFF'S REQUEST FOR TSI AND NORTHALL TO SHOW CAUSE

be held in contempt for violating its terms, because they were not parties to the action, were not named in the Court's preliminary injunction order, and are neither in privity with, nor a successor-in-interest to, any entity subject to the injunction. *See* Opp'n. at 2, 6, 8-10. In contrast, ASI argues that although TSI and Northall are not named parties in the injunction order, they are properly subject to the injunction because (a) there is "sufficient 'privity'" between TSI/Northall and CAL/DSI, who are bound by the injunction; and/or (b) TSI/Northall are successors in interest "to the equipment and assets that are subject to the injunction." Mot. at 11. Bearing in mind that the movant has the burden of proving contempt by clear and convincing evidence, *Wolfard Glassblowing Co. v. Vanbragt*, 118 F.3d 1320, 1322 (9th Cir. 1997), the Court concludes that ASI has not proven by clear and convincing evidence that nonparties TSI and Northall are bound by the injunction, as explained below. Thus, the Court DENIES ASI's request for an order to show cause.

### A. ASI has not shown clear and convincing evidence that TSI/Northall aided and abetted CAL/DSI in violating the injunction, are "legally identified" with CAL/DSI, or are in "privity" with CAL/DSI.

As stated above, the federal rules of civil procedure "provide for enforcement of judgments against non-parties in limited circumstances." *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1323 (9th Cir. 1998). Pursuant to Fed. R. Civ. P. 65(d), an injunction is "binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." Fed. R. Civ. P. 65(d). The Ninth Circuit has interpreted this rule to develop two alternative standards under which a court may hold a nonparty in contempt. First, a nonparty may be held in contempt if the nonparty had notice of the order, and either aids or abets the defendant in violating the court's order or is "legally identified" with the defendant. *Peterson*, 140 F.3d at 1323 (citation omitted). Second, the Ninth Circuit has held that "a decree of injunction not only binds the [] defendant, but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1280 (9th Cir. 1992) (citation omitted). "Privity" exists when a third party's interests are so intertwined with a named party's interests that it is fair to hold the third party bound by the judgment against the named party, i.e., to bind TSI/Northall by the injunction against CAL/DSI.

Case No.: 12-CV-06138-LHK                                                6
ORDER DENYING PLAINTIFF'S REQUEST FOR TSI AND NORTHALL TO SHOW CAUSE

*United States v. ITT Rayonier, Inc.*, 627 F.2d 996, 1003 (9th Cir. 1980). Privity can also arise if a third party, here TSI/Northall, had control over the litigation of the injunction conducted by the named party, here CAL/DSI, *see Montana v. United States*, 440 U.S. 147, 154 (1979), or if TSI/Northall's interests were adequately represented by CAL/DSI in the injunction proceedings, *see Rayonier*, 627 F.2d at 1003. The Court concludes that ASI has failed to meet its burden either under *Peterson* or *Class Plaintiffs*, as explained below.

The Court first finds that ASI fails to meet its burden under *Peterson* to prove that TSI and Northall either aided or abetted CAL/DSI in violating the injunction or that they are somehow "legally identified" with CAL/DSI. *Peterson*, 140 F.3d at 1323. First, while ASI claims that both CAL/DSI and TSI/Northall have violated the terms of the preliminary injunction, *see* Mot. at 4-5(CAL/DSI), 12-13(TSI/Northall), ASI never alleges that TSI/Northall aided and abetted or somehow acted in concert with CAL/DSI when CAL/DSI violated the injunction. *See* Mot. at 11-14. Rather, ASI argues that "TSI and Northall, acting individually or in concert, have taken a number of actions that are in clear violation" of the injunction. Mot. at 12. Second, under the limited guidance courts have provided regarding what it means for a nonparty to be "legally identified" with a party bound by an injunction, ASI has not met its burden of showing that TSI/Northall are legally identified with CAL/DSI. *See NLRB v. Sequoia Dist. Council of Carpenters*, 568 F.2d 628, 633 (9th Cir. 1977) ("[P]rincipal officers of a labor union are [] legally identified with it, and thus [are] liable in contempt for disobeying an order directed to the union."); *United States v. Montgomery Global Advisors LLC*, No. C-04-00733 EDL, 2006 WL 950102 at *2 (N.D. Cal. Mar. 2, 2006) (holding, in case where contempt order was directed solely to a corporate defendant, that managing member could be held personally liable for defendant's contempt because he "had and continues to have the ability to act on behalf of that entity and is therefore legally identified with it."); *Fid. Nat. Fin., Inc. v. Friedman*, 76 Fed. R. Serv. 3d 276 at *13 (D. Ariz. 2010) (holding that nonparty was not "legally identified" with the party bound by court order for contempt purposes because the plaintiff had not shown that the nonparty was at the very least either "legally responsible for the affairs of" the party bound or that he "had and continues to have the ability to act on [his] behalf"). Here, ASI has not shown that TSI/Northall are the managing

members or principal officers of CAL/DSI, or that TSI/Northall act on behalf of CAL/DSI in some legal capacity.

Second, the Court finds that ASI fails to meet its burden under *Class Plaintiffs*. ASI has not presented any evidence, let alone clear and convincing evidence, that TSI/Northall were somehow represented by CAL/DSI, were subject to CAL/DSI's control, had control over the litigation between CAL/DSI and ASI, or had their interests represented by CAL/DSI when this Court entertained the parties' arguments before entering the preliminary injunction order. Nor is the Court convinced by ASI's claim that there is "sufficient 'privity'" between TSI/Northall and CAL/DSI because there was an "alignment of interest between TSI and CAL/DSI at the time when CAL/DSI transferred the assets at issue to TSI." Mot. at 11. ASI supports this argument by noting that "CAL/DSI wanted to transfer the assets for monetary consideration and TSI (and its affiliates) wanted to acquire the assets in question. . . . [the] transaction [] resulted in a mutual benefit to both sides." Reply at 6. As a preliminary matter, it is unclear precisely what asset transactions ASI refers to here in attempting to establish privity. However, in its "factual background" section, ASI cites two key transactions: (1) TSI's alleged purchase of substantially all of the assets and equipment at the San Jose Facility sometime after November 1, 2012 from CAL/DSI, Mot. at 3, and (2) Northall's purchase of the real property comprising the San Jose Facility on April 12, 2013, Mot. at 4. As explained below, the Court finds that neither transaction suffices to establish privity between TSI/Northall and CAL/DSI.

First, the Court addresses the sale of substantially all the SVTC equipment and assets which occurred sometime after November 1, 2012.[3] The first hurdle ASI faces when attempting to establish privity through this transaction is that ASI has not proven by clear and convincing evidence that TSI was the entity that made this purchase. ASI's motion states, "CAL/DSI sold substantially all of the equipment at the San Jose Facility to TSI." Mot. at 3. ASI supports this argument by claiming that Telefunken successfully bid for and purchased the equipment, and that Telefunken was simply TSI's former name. *See* Zarian Decl. Exhibit G at 93 (deposition testimony

---

[3] While TSI/Northall claim this transfer of assets and equipment occurred in two separate transactions, one in November 2012 and the other in December 2012, this difference does not change the Court's analysis.

Case No.: 12-CV-06138-LHK                                  8
ORDER DENYING PLAINTIFF'S REQUEST FOR TSI AND NORTHALL TO SHOW CAUSE

of CAL/DSI's representative stating that Telefunken bought the assets that were auctioned); Zarian Decl. ¶ 11 (citing Zarian. Decl. Exhibit H (Sacramento business press article noting that Telefunken changed its name to TSI) for the proposition that Telefunken changed its name to TSI)[4]; Mot. at 1, 2 (claiming Telefunken was the former name of TSI). ASI further notes that Telefunken and TSI "shar[e] a common business address," Reply at 3, but does not cite any evidence in support. In contrast, TSI/Northall claim that neither Telefunken nor TSI was the acquiring entity. Bridgeford Decl. ¶ 4,7. And TSI/Northall repeatedly assert that Telefunken is a "separate legal entity" from TSI, Opp'n at 4; Bridgeford Declaration ¶ 7, though they never address or rebut ASI's assertion that TSI was formerly known as "Telefunken." Given these conflicting assertions and evidence, the Court finds that even if the Court were convinced that Telefunken made the purchase, ASI has not submitted clear and convincing evidence that Telefunken was in fact the former name of TSI such that Telefunken's purchases were really TSI's purchases. ASI's sole evidence in support of the lineage between Telefunken and TSI is a news article which may contain incorrect facts. *See* Zarian Decl. Exhibit H (Sacramento business press article noting that Telefunken changed its name to TSI).

Nonetheless, even assuming ASI has proven by clear and convincing evidence that TSI bought the assets in question, the Court concludes that ASI's "privity" argument would fail for a second reason. In the Ninth Circuit, there is no law that holds that a mere transfer of assets such as the one in this case creates privity between two parties for purposes of holding a nonparty bound to an injunction. While ASI cites *American Equipment Corp. v. Wikomi Mfg. Co.*, 630 F.2d 544 (7th Cir. 1980), for the proposition that "two companies are in privity when one sells corporate assets subject to the injunction to another," *see* Mot. at 10, that case did not so hold, as the "factual determination of privity [was] not before [the court] for decision." *American Equipment*, 630 F.2d at 546 n.1. Rather, the *American Equipment* court only reached a "tentative conclusion" that there was "sufficient continuity in property ownership and personnel" between the defendant corporation

---

[4] TSI/Northall object to Zarian's recitation of information in the Sacramento business article on the basis of speculation, lack of personal knowledge, and hearsay. Opp'n at 16 (Objection Number 18). The Court SUSTAINS the objection because Zarian's recital of the statements in the article is hearsay. Fed. R. Evid. 801.

and its predecessor company based on the transfer of the predecessor's assets such that there was privity between them.[5] *Id.* Thus, *American Equipment*'s statement was dicta, not a holding. But even viewing *American Equipment* as persuasive authority for the proposition that a transfer of assets can create "privity" between two entities, the Court is not convinced by ASI's argument because *American Equipment* is materially distinguishable from the instant case, as explained below.

        Notably, ASI represents CAL/DSI as having been the "assignee for the benefit of [SVTC's] creditors" when SVTC was dissolved. Mot. at 3. Under well settled common law, an assignee who serves this function temporarily attains "title" to all of the liquidating company's assets in order to sell off the assets for the benefit of the creditors. *Clark v. Williard*, 294 U.S. 211, 214 (1935); *Dambmann v. White*, 48 Cal. 439, 450 (1874). Thus, the Court assumes that CAL/DSI had title of SVTC's assets and equipment, which is supported by evidence in the record. *See* Zarian Decl. Exhibit G at 239 (deposition testimony of CAL/DSI's representative stating that the "assignee" had received title to SVTC's assets). As assignee, it was CAL/DSI's job to auction off SVTC's assets and equipment in order to satisfy SVTC's creditors. The Court finds that any asset transaction between CAL/DSI and TSI made as part of this auctioning process cannot serve as the basis for establishing privity between CAL/DSI and TSI. This is because this factual scenario is sharply different from the facts in *American Equipment*. In *American Equipment*, the court found privity because there was a wholesale and *direct* transfer of assets from one company who used those assets to another company who was using those very same assets such that the second company was basically continuing the business of the first company. *American Equipment*, 630 F.2d at 546 n.1. Indeed, the *American Equipment* court emphasized the "sufficient continuity in property ownership and personnel" between the two companies as important to its reasoning. *Id.; see also Brunswick Corp. v. Chrysler Corp.*, 408 F.2d 335, 338 (7th Cir. 1969) (holding that *direct* transfer

---

[5] The *American Equipment* court reached this tentative conclusion in the context of a case which required the court to decide whether a consent decree, which adjudged a patent to be valid and infringed and which was entered between the predecessor company and the plaintiff, would be res judicata on the instant patent infringement claim against the defendant corporation. *Id.* The court's holding was that the consent decree could be accorded res judicata effect on the instant claim between the plaintiff and the defendant. *Id.* at 545.

of all business assets from predecessor company who conducted a certain business to successor company who conducted same business meant successor was in privity with predecessor with respect to consent decree entered against precedessor for res judicata purposes, and noting "Chrysler purchased from The West Bend Company the entire business that was devoted to the production of 'Tiger Shark 800' outboard motors and the inboard-outboard stern drives used with such motors. Furthermore, The West Bend Company, . . . transferred both its manufacturing and sale facilities and also its personnel to Chrysler. It follows that Chrysler does stand in the shoes of The West Bend Company with respect to the decree."). Here, in contrast to *American Equipment* and *Brunswick*, CAL/DSI's position as an assignee for the benefit of SVTC's creditors means that there was no *direct* transfer of assets from a company that actually used the assets to a successor company that would also use the assets in a similar business capacity such that the successor company was basically "standing in the shoes" of the successor company. Rather, the transfer of assets occurred through an intermediary, CAL/DSI, who simply transferred the assets from SVTC to TSI as part of an auctioning process on behalf of SVTC's creditors. There is nothing in the record which leads this Court to conclude that TSI was standing in the shoes of CAL/DSI as a result of the transfer of assets. Thus, this case is materially distinguishable from those cases which conclude that privity can be established based on a "transfer of assets."

The Court further notes that it is unconvinced by ASI's argument that there is privity between CAL/DSI and TSI because they had "aligned interests" when the asset transaction occurred. Mot. at 11. To find privity simply because both parties mutually benefited from the asset transfer would create a rule that privity is established whenever parties engage in a mutually beneficial business transaction. Under such a rule, *all* entities that transact with parties bound by an injunction would presumably be bound by the injunction. Such a rule does not comport with the Supreme Court's instruction that courts may not extend the reach of an injunction "so broad as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law." *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 13 (1945); *see also Lynch v. Rank*, 639 F.Supp. 69, 73 (N.D. Cal. 1985) ("to be subject to the Court's contempt powers, there must at the very least exist a *strong* identity of interests between the enjoined defendant and the

Case No.: 12-CV-06138-LHK                        11
ORDER DENYING PLAINTIFF'S REQUEST FOR TSI AND NORTHALL TO SHOW CAUSE

would-be contemnor . . . there must exist a commonality of incentives and motivations between the [two parties]. Plaintiffs have made no real showing that the interests and motivations of the [two parties] are identical, or even overlapping.") (emphasis added); *c.f. Friedman*, 76 Fed. R. Serv. 3d at *13 (holding that a mere "business relationship does not translate to a finding that [non-party] is legally identified with [the party bound by the order] for contempt purposes"). ASI cites no case law which holds that a transfer of assets like the one in this case suffices to prove that a third party's interests are so aligned with the party bound by a judgment such that it is fair to hold the third party bound by the judgment. Nor has the Court found any law holding that a transfer of assets from an assignee to buyers for the purpose of attaining money for creditors creates privity between the assignee and the buyer. Accordingly, the Court finds that any alleged alignment of interests between CAL/DSI and TSI during the asset transaction is insufficient to constitute privity in this case.

Finally, the Court holds that the same reasoning applies with respect to the sale of the San Jose Facility to Northall, *see* Mot. at 4 ("CAL/DSI caused the real property and facility comprising the San Jose Facility to be sold"). Again, there, CAL/DSI simply functioned as an intermediary as assignee to the property, and no privity was established between CAL/DSI and Northall based on this transfer of property.

In sum, the Court finds that ASI has failed to make the requisite showing either under *Peterson* or *Class Plaintiffs* regarding why TSI and Northall should be bound by the injunction.

**B.     ASI has not shown clear and convincing evidence that TSI and Northall are "successors in interest" to CAL/DSI.**

The Court now addresses ASI's alternative argument that TSI/Northall are bound by the injunction because they are "successors in interest," Mot. at 11, and concludes that ASI's argument fails.

The Supreme Court has held that "[s]uccessors and assigns may [] be instrumentalities through which [a] defendant [who is bound by an order] seeks to evade [the] order or may come within the description of persons in active concert or participation with them in the violation of an injunction. If they are, by that fact they are brought within scope of contempt proceedings by the

rules of civil procedure . . ." *Regal Knitwear*, 324 U.S. at 14 (referring to Federal Rule of Civil Procedure 65(d) which states that injunction orders bind only the parties and their officers, agents, servants, employees, and attorneys, and those in active concert or participation with them)[6]; *see also Red 1 Investments, Inc. v. Amphion Intern. Ltd.*, No. CV-06-279-LRS, 2007 WL 3348594 at *2 (E.D. Wash. 2007) (citing *Regal* and holding that "successors in interest to parties bound by the order" can be held in civil contempt of the order); *FilmKraft Productions India Pvt Ltd. v. Spektrum Ent., Inc.*, No. 2:08-CV-1293 JCM GWF, 2011 WL 2791477 at *1 (D. Nev. 2011) (same).

Here, ASI does not argue that, under *Regal*, TSI/Northall are successors in interest to CAL/DSI – the *party* bound by the order – by virtue of the fact that CAL/DSI has sought to evade the injunction through TSI/Northall or because TSI/Northall acted in concert with CAL/DSI to violate the injunction. *Regal*, 324 U.S. at 14. Rather, ASI states in a conclusory fashion that "TSI/Northall is a successor in interest to the *assets and equipment* that are subject to the injunction. There is no dispute here that TSI acquired most of the assets that were located at the San Jose Facility [] and which contain or once contained ASI's intellectual property." Mot. at 11 (emphasis added). This statement is the entire argument ASI offers in support of the notion that TSI/Northall should be bound by the injunction as successors in interest. Presumably, ASI intends to argue that TSI/Northall are successors in interest *to CAL/DSI*, rather than "to the assets and equipment," by virtue of the alleged purchase of assets and equipment from CAL/DSI. Although it is unclear precisely what "assets and equipment" ASI refers to, the Court assumes that ASI references the sale of SVTC's assets and equipment sometime after November 1, 2012.[7] Because ASI claims that TSI, and not Northall, made this purchase, *see* Mot. at 3, the Court concludes this argument does not provide a basis to find that *Northall* was a successor in interest to CAL/DSI.

---

[6] No Ninth Circuit cases have relied on this holding in *Regal* to find successor liability in the contempt context.

[7] ASI does not reference the real property sale of the San Jose Facility in making this argument because when discussing the assets, it states, "There is no dispute here that TSI acquired most of the assets that were located at the San Jose Facility." Mot. at 11.

Case No.: 12-CV-06138-LHK                    13
ORDER DENYING PLAINTIFF'S REQUEST FOR TSI AND NORTHALL TO SHOW CAUSE

Thus, the Court restricts its analysis to whether ASI has shown that TSI was a successor in interest based on this transaction. As explained below, the Court finds that ASI's argument fails. As such, neither Northall nor TSI can be bound by the injunction as successor in interest to CAL/DSI.

There is no Ninth Circuit case law holding that nonparties are deemed to be "successors in interest" to a party bound by an injunction, and thus that the nonparties are bound by the injunction themselves for contempt purposes, when the nonparty purchases assets from an enjoined party. However, there is some case law suggesting that a transfer of assets can create "successor liability" in other contexts. For example, in *Golden State Bottling Co. v. NLRB*, 414 U.S. 168 (1973), which ASI cites, Mot. at 10, the United States Supreme Court held that a company that purchases the assets of another company who is liable under the National Labor Relations Act may be liable under the NLRA as a successor employer if the successor is the "continuing business enterprise" of the first employer. *Id.* at 180. There, Golden State Bottling Company had discharged a sales employee for engaging in protected union activities in violation of the NLRA. *Id.* at 170. The National Labor Relations Board ordered the company and its "successors and assigns" to reinstate the employee with backpay. *Id.* at 171. Subsequently, Golden State Bottling Company sold its entire business to All American Beverages, Inc., and the employee initiated a backpay liquidation proceeding before the NLRB against both companies. *Id.* The NLRB found that All American was a successor in interest that was required to reinstate the employee and was jointly and severally liable with Golden State Bottling Company for the backpay award. *Id.* at 171-72. The Ninth Circuit upheld the NLRB's finding, and the United States Supreme Court affirmed. *Id.* at 172. Critically, the Supreme Court rejected All American's argument that Fed. R. Civ. P. 65(d) barred enforcement of the NLRB's order against a successor, holding that "a bona fide purchaser, acquiring, with knowledge that the wrong remains unremedied, the employing enterprise which was the locus of the unfair labor practice, may be considered in privity with its predecessor for purposes of Rule 65(d)."[8] *Id.* at 180. There is also out of circuit authority suggesting that successor liability can be found in similar circumstances as those presented in *Golden State*, i.e., where the successor bought

---

[8] ASI cites *Golden State* for the proposition that "[a] successor in interest is subject to an injunction entered against his predecessor." Mot. at 10. However, as explained above, *Golden State* does not stand for any such broad proposition.

Case No.: 12-CV-06138-LHK                         14
ORDER DENYING PLAINTIFF'S REQUEST FOR TSI AND NORTHALL TO SHOW CAUSE

the entire business directly from the predecessor company. *See Herrlein v. Kanakis*, 526 F.2d 252 (7th Cir. 1975) (holding, in case involving direct transfer of all of predecessor company's assets to successor company, that successor in interest *could* be held in contempt for violating an injunction entered against the predecessor company, but ultimately finding no successor liability in the case at hand because the transfer of assets was not made to evade the injunction).

Here, for substantially the same reasons as those set forth above as to why ASI's "privity" argument fails, the Court concludes that ASI's "successor in interest" argument fails. This case is materially distinguishable from cases like *Golden State* and *Herrlein* because those cases held that the buying entities could be considered "successors in interest" subject to an order or injunction that bound their predecessors in situations where the successor had bought the entire business directly from the predecessor company that was using the business assets. Here, even assuming that ASI has proven with clear and convincing evidence that TSI was the entity that bought the assets, CAL/DSI's position as an assignee for the benefit of SVTC's creditors means that there was no transfer of assets from a company that actually used the assets to a successor company that would also use the assets in a similar business capacity. Rather, the transfer occurred through an intermediary, CAL/DSI, who merely transferred the assets from SVTC to TSI as part of an auctioning process for the benefit of SVTC's creditors.[9]

The Court finds further support for its conclusion in two other respects. First, it is supported by the Supreme Court's reasoning in *Golden State* that a company could only be brought within the scope of Fed. R. Civ. P. 65(d) as a successor in interest under *Regal* if it was substantially the same business enterprise as the predecessor company, i.e. a "continuing business enterprise," such that there was a "relationship of dependence" between the two. *Golden State*, 414 U.S. at 180. The Court's reasoning suggests that some kind of close connection or relationship is required to establish successor liability. In the case at hand, while there is a strong argument that there is a relationship of dependence between SVTC and TSI, given that TSI allegedly bought substantially all of SVTC's assets and equipment, there is no showing of any sort of dependence between

---

[9] The Court also notes that the facts of *Golden State* are highly specific to the labor context, and the Court has found no cases which apply *Golden State* to find successor liability outside of the labor and employment context.

Case No.: 12-CV-06138-LHK                                15
ORDER DENYING PLAINTIFF'S REQUEST FOR TSI AND NORTHALL TO SHOW CAUSE

CAL/DSI and TSI. Second, the Court's finding is supported by language in the Supreme Court's *Regal* decision which suggests that a transfer of assets creates successor liability only in situations where the transfer of assets has been made *in order to evade* an injunction. *See Regal*, 324 U.S at 14-15 ("Not only is such an injunction enforcible by contempt proceedings against the corporation, its agents and officers and those individuals associated with it in the conduct of its business, but it may also, in appropriate circumstances, be enforced against those to whom the business may have been transferred, [] as a means of evading the judgment . . ."); *id.* at 14 ("[s]uccessors and assigns may [] be instrumentalities through which [a] defendant [who is bound by an order] seeks to evade [the] order . . . If they are, by that fact they are brought within scope of contempt proceedings by the rules of civil procedure . . ."). Here, CAL/DSI could not have transferred the equipment and assets to TSI as a means to evade the judgment because the transfer occurred in late 2012, *before* the April 2, 2013 injunction was entered by this Court. *See Herrlein*, 526 F.2d at 255 (holding that direct transfer of all of predecessor company's assets to successor did not mean that successor in interest could be held in contempt for violating injunction entered against predecessor because transfer of assets occurred *before* entry of the injunction and thus could not have been a means used by the predecessor to evade the injunction). Overall, the Court concludes that the transfer of assets between CAL/DSI and TSI does not suffice to prove that TSI is a "successor[s] in interest" to CAL/DSI.[10]

Because this Court finds that ASI has not shown clear and convincing evidence that TSI/Northall either aided and abetted CAL/DSI, are "legally identified" with or in privity with CAL/DSI, or are successors in interest to CAL/DSI, the Court holds that TSI/Northall are not bound by this Court's preliminary injunction. As such, the Court need not reach the question

---

[10] TSI/Northall cite a rule that asset purchasers are not liable as "successors in interest" for the seller's debts and liabilities unless one of four exceptions applies. Opp'n at 9-10 (citing *Louisiana–Pacific Corp. v. Asarco, Inc.*, 909 F.2d 1260, 1263-64 (9th Cir. 1990), *overruled on other grounds by Atchison, Topeka and Santa Fe Ry. Co. v. Brown & Bryant, Inc.*, 159 F.3d 358 (9th Cir. 1997), and *Gee v. Tenneco*, 615 F.2d 857 (9th Cir. 1980)). However, this rule is inapplicable here because these cases apply this rule either in the context of holding a successor company liable for products liability or in the context of deciding the issue of corporate successor liability under the Comprehensive Environmental Response, Compensation and Liability Act of 1980. TSI/Northall cite no cases which apply this rule in the context of deciding whether a nonparty can be held in contempt for violating an injunction.

Case No.: 12-CV-06138-LHK                                            16
ORDER DENYING PLAINTIFF'S REQUEST FOR TSI AND NORTHALL TO SHOW CAUSE

whether TSI/Northall received actual notice of the injunction order or actually violated the terms of the injunction order through their actions. *See* Fed. R. Civ. P. 65(d)(2) (injunction orders bind "only the following who receive actual notice of it . . ."); *Reno Air Racing*, 452 F.3d at 1130 (holding that civil contempt "consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply.")

The Court notes here that in reaching its decision, it has not ignored ASI's allegation in its briefing that it would be unfair to let TSI/Northall off the hook in this case when TSI/Northall was aware of the injunction and moved assets subject to the injunction out of the San Jose Facility, thus interfering with ASI's retrieval of assets that may have contained its intellectual property. *See generally* Mot. and Reply. Even assuming that ASI has proven that TSI/Northall knew about the injunction and moved the assets in question,[11] such a showing is simply not enough under the case law to hold a nonparty bound by an injunction without a showing of privity or active concert with the bound party, as discussed above. Further, while ASI claims TSI/Northall acted unfairly by not intervening in the action to attain clarification whether TSI/Northall were subject to the injunction before allegedly violating its terms, Reply at 4-5, ASI's argument is foreclosed by Supreme Court law. In *Martin v. Wilks*, 490 U.S. 755, 763 (1989), the Supreme Court held that the fact that a third party, such as TSI/Northall, knew of an existing lawsuit but deliberately chose not to intervene does not mean that he is bound by the judgment. The Court held that the third party is under no obligation to intervene, and that the prior judgment is simply void as to the non-joined third party. *Id.* at 762-65.

## IV.   TSI/NORTHALL'S OBJECTIONS TO ASI'S DECLARATIONS

ASI submitted two declarations in support of its motion. ECF No. 79-9 (Declaration of John Zarian); ECF No. 79-1 (Declaration of Doug Hackler). TSI/Northall present 45 objections to various parts of the Zarian and Hackler declarations. *See* Opp'n. at 11-25. However, TSI/Northall provide no argument or explanation in support of *any* of their objections. *Id.* When faced with similarly boilerplate objections without supporting explanations, courts have held that it would

---

[11] Northall claims that it made "extraordinary efforts" to cooperate with ASI and to allow ASI to remove any equipment that may contain ASI's intellectual property from the San Jose Facility. Opp'n at 1, 4-5.

Case No.: 12-CV-06138-LHK                                      17
ORDER DENYING PLAINTIFF'S REQUEST FOR TSI AND NORTHALL TO SHOW CAUSE

"not address boilerplate evidentiary objections that the parties themselves deem unworthy of development." *Amaretto Ranch Breedables v. Ozimals, Inc.*, 907 F.Supp.2d 1080, 1092 (N.D. Cal. 2012) (summarily overruling the objections); *see also Californians for Disability Rights, Inc. v. Cal Dep't of Transp.*, 249 F.R.D. 334, 349-50 (N.D. Cal. 2008) (overruling defendants' evidentiary objections where objections were "simply boilerplate, and include absolutely no explanation as to why the testimony in question is objectionable. The summary, vague nature of these objections is grounds alone for the court to deny them. . . . The Court declines the defendants' invitation to analyze objections that defendants did not themselves bother to analyze, and the objections are overruled on those grounds alone."); *Dukes v. Wal-Mart, Inc.*, 222 F.R.D. 189, 199 (N.D. Cal. 2004) ("Defendant's attempt to assert these objections without providing any individualized discussion is procedurally defective. The objections therefore merit summary denial on the ground that they are unduly vague."); *Cmtys. Actively Living Indep. & Free v. City of L.A.*, No. CV09-287CBM (RZX), 2011 WL 4595993, at *8 (C.D. Cal. Feb. 10, 2011) (summarily overruling objections while holding that "[i]t is not the Court's responsibility to attempt to discern the City's grounds for objecting to evidence submitted by Plaintiffs where the City merely repeats the same categorical objections but provides little to no explanation as to why the subject evidence is objectionable.") This Court agrees with these other courts that this Court is not obligated to rule on a party's objections when that party provides no argument or analysis regarding those objections. Accordingly, the Court OVERRULES all of TSI/Northall's objections.

Further, the Court notes that it would overrule TSI/Northall's objections as moot anyway, as the Court does not rely, in resolving this motion, on the material to which TSI/Northall objects. Thus, the Court also OVERRULES all of the objections, except Objection Number 18, as moot. The Court already SUSTAINED Objection Number 18, *see supra* page 9 n.4.

## VI. CONCLUSION

For the foregoing reasons, the Court DENIES ASI's request for an order to show cause. Because the Court finds no basis to issue contempt sanctions against TSI/Northall, the Court also DENIES ASI's request for sanctions against TSI/Northall and for reasonable attorneys' fees.

**IT IS SO ORDERED.**

Dated: October 31, 2013



LUCY H. KOH
United States District Judge